THOMPSON et al., Respondent, v. THE STATE AUTOMO-
BILE INS. ASSOCIATION, Appellant.

(18 N. W.2d 286.)

(File No. 8694.   Opinion filed April 16, 1945.)

**Van Slyke & Agor** and **Douglas W. Bantz,** all of Aberdeen, for Appellant.

**Gorsuch & Huntsinger,** of Aberdeen, for Respondents.

SMITH, P. J. In this action plaintiffs sought to recover under a contract of insurance for loss and damage to a Ford truck suffered in a collision. The controversy is over the coverage of the policy. By answer, and by motion for judgment made at the close of the case, defendant asserted that the policy did not insure plaintiffs against loss and damage by collision to the particular truck. The cause was tried to the court and resulted in a judgment for plaintiffs from which defendant has appealed.

By application in writing dated July 5, 1941, plaintiffs appointed defendant as their attorney in fact for the purpose of exchanging insurance contracts (see SDC 31.09) and sought reciprocal insurance on its transportation equipment. This application described six pieces of equipment by make, motor number, etc. It also indicated the kind and amount of insurance requested upon each separate piece of equipment. The only request for coverage against collision contained in this application was for $100 deductible insurance against collision upon two pieces of International equipment. The application as prepared indicated the premium to be deposited for each risk to be assumed by the subscribers to the exchange. Among the premiums thus described were two separate items of $28 each, or a total of $56, for the above-mentioned insurance against collision on the two pieces of International equipment.

Through error the application described a Ford truck plaintiffs no longer owned, instead of the truck described in the complaint. As a result, the truck described in the complaint was added to the policy by an endorsement we shall presently describe.

The policy written in response to the application is made up of a principal printed form and various riders or endorse-

ments. The body of the printed form contains certain general and specific provisions dealing with the subject of collision, reading as follows:

"The Subscribers of The State Automobile Insurance Association  *  *  *  in consideration of the exchange of insurance, the premium deposit,  *  *  *  do hereby severally agree with the Subscriber named herein to insure such Subscriber  *  *  *  under such of the following coverages for which a specific premium deposit applicable thereto is shown in the Schedule of Statements:  *  *  *"

"To insure,  *  *  *  against direct loss or damage to the automobile  *  *  *  caused by:

"Clause 7.  Accidental upset or collision with another object, either stationary or moving  *  *  *.  The collision insurance herein provided shall be subject to the following provisions applicable thereto:

"A.  Deductible Collision.  If a deductible sum is stated under Clause 7, subdivision A of the Schedule of Statements, The Association will pay only such amount of each separate loss as shall be in excess of said deductible sum;

"B.  Convertible Collision.  The additional payment of premium deposit specified under Clause 7, subdivision B of the Schedule of Statements must be paid to the Home Office of The Association upon the occurrence of the first collision or upset, which is made the basis of claim under this policy, before this Association will be obligated to pay for any loss or damage occurring under Clause 7 of this policy as a result of any reported accident."

It will be noted that according to the terms of these general provisions the collision coverage is rendered operative if a "specific premium deposit applicable thereto is shown in the Schedule of Statements", and the coverage of such a risk is limited to deductible collision "if a deductible sum is stated under Clause 7, subdivision A of the Schedule of Statements."  The "Schedule of Statements" to which these paragraphs make reference appears on the first page of the principal printed form.  Clause 7 of that schedule reads as follows:

"Clause 7

| Collision | Actual amount of |
| A. Deductible | each loss in excess |
| | of $———— See |
| | Endorsement $ 56.00 |

B. Convertible. (The
additional pay-
ment of $————
must be paid be-
fore claim is
made under this        $ Nil
coverage.) Act-
ual Value.            First Payment"

The words "See Endorsement" and "Nil" and the figures "56.00" are typed, and the remainder of the clause is printed.

Paragraph 6 of the Schedule of Statements was intended for use in describing the automobile insured. Space is provided therein for the description of a single vehicle. In that space is typed "See Equipment Endorsement." The Equipment Endorsement lists the six pieces of equipment described in the application, and contains the following statement: "The insurance afforded is only with respect to such and so many of the insurance coverages provided by this policy as are specifically made applicable to the motor vehicle hereinafter described:"

A further endorsement reads: "In consideration of a reduction of the premium, it is understood and agreed that in each and every loss hereunder, under the collision coverage, the assured shall bear the first One Hundred ($100.00) Dollars thereof on the No. 3 International Van, Motor No. FAB24124340 and the First One Hundred ($100.00) Dollars thereof on the No. 4, International Van, Motor No. FAB-24122297 but shall be entitled to recover such amount of each and very loss as shall be in excess of One Hundred ($100.00) Dollars on each unit."

As the policy was originally written, the foregoing was the only endorsement annexed thereto which made any specific mention of collision coverage. Several days after the effective date of the policy it was discovered that the

wrong Ford truck had been described. At the same time, and for reasons that need not be stated, it was determined that plaintiffs wanted $50 deductible insurance against collision on a Chevrolet truck originally described in the application and policy. Thereupon, there was added to the policy an endorsement describing the Ford truck described in the complaint, which endorsement reads in part as follows:

"In consideration of an additional premium deposit of $33.00, It is agreed that this policy hereby ceases to cover the following described motor vehicle:

"1938 Ford Truck, Mtr. No. 18-4202247

And is transferred to cover in lieu thereof, the following described motor vehicle:

"1938 Ford Truck, Mtr. No. 18-4272816

"It is further agreed that this policy is hereby extended to provide Fifty Dollar Deductible Insurance on the 1939 Chevrolet Truck, Mtr. No. 2372911 as follows: *  *  * "

In substance, it is the theory of plaintiffs that the policy by its terms insured against loss and damage by collision to all of the equipment described therein including the Ford truck described in the complaint. Two factors are pointed out as the basis of this conclusion. It is first said that the entry of a premium deposit of $56 in Clause 7 of the Schedule of Statements, as set forth, supra, rendered operative the broad general agreement to insure against loss from collision. It is then pointed out that the only limitations on that agreement appearing in the endorsements are those reducing that coverage to $100 deductible on two pieces of International equipment and to $50 deductible on the piece of Chevrolet equipment.

In advocating the foregoing interpretation counsel for plaintiffs assert that the intention of the parties must be ascertained from the provisions of the policy and of its endorsements to the exclusion of anything appearing in the application for the policy. Even when analysis is so confined, two obstacles to such an interpretation appear. The Equipment Endorsement provides: "The insurance afforded is only with respect to such and so many of the insurance coverages provided by this policy as are specifically made applicable to the motor vehicles hereinafter described:"

The only specific mention of collision coverage as to particular pieces of equipment appears in the endorsement dealing with collision coverage on the two International trucks. The endorsement providing for deductible collision on the Chevrolet offers the second obstacle to plaintiff's view. According to that view, it necessarily follows that the Chevrolet and all other equipment described in the policy, except the two International trucks, were fully covered by insurance against collision under the original terms of the policy. A limiting endorsement was required to cut that coverage down to $50 deductible insurance against collision on the Chevrolet. To the contrary, the endorsement states that the policy is "extended" to provide such deductible coverage.

██ ██ We have concluded that we are not warranted in excluding the application from consideration. The policy provides as follows: "Whenever the word * * * 'policy' occurs herein, it means and shall be taken and construed to mean, this policy contract in its entirety, including Endorsements attached hereto, and the application for insurance, except as modified herein."

The application was not attached to the policy. But in the absence of a statute requiring the application to be so attached, the parties can make the application a part of their contract by reference. Our attention has not been directed to a statute requiring the attachment of an application for reciprocal insurance to the resulting policy. We deem the quoted reference to the application sufficient to indicate an intention to make it a part of the contract. 29 Am. Jur. 188.

██ It is impossible to read these several instruments together and fail to understand that the parties have not manifested an intention to provide any character of collision coverage for the truck described in the complaint. The application sought no such coverage. It was for a deductible collision coverage on but two of the six described units, viz., the International trucks. It estimated the premium deposit for the coverage on those two trucks at $56. The intention to accept that offer without modification is made manifest by the entry of that exact amount of premium deposit in Clause 7 of the Schedule of Statements. That this deposit

was for some character of deductible collision insurance was indicated by completing the blanks reading "Actual amount of each loss in excess of $————" by inserting the words "See Endorsement" in the blank prepared to state the deductible amount. It should be observed that the word "Endorsement" refers to a single endorsement. The only endorsement attached dealing with insurance against collision provides for the very coverage described in the application, viz., $100 deductible collision upon the two International trucks. This intention to limit the collision coverage to the two units particularly described in the foregoing endorsement by the original terms of the contract, is indicated by the subsequent endorsement "extending" the policy to provide collision coverage for the Chevrolet truck. These two endorsements take on further significance when read in connection with the above-quoted language of the Equipment Endorsement. They contain the only language of the contract by which collision insurance is "specifically made applicable" to particular motor vehicles.

Interpreted as providing for collision insurance upon but three of the six units of equipment, all of the language employed by the parties is rendered effective, and the contract becomes an harmonious whole. The interpretation advocated by plaintiffs ignores the terms of the application, the equipment endorsement, and the endorsement "extending" the policy to provide collision coverage for the Chevrolet, and places a strained construction upon Clause 7 of the Schedule of Statements.

The language employed by this court in Hemmer-Miller Development Co. v Hudson Ins. Co., 59 S. D. 129, 238 N. W. 342, 343, is apposite here. It was there written: "An insurance policy must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time the contract was executed, and, in determining the intention of the parties, all the provisions of the policy must be considered and construed together, and the intention ascertained from the language of the policy alone, if possible. Miller v. St. Paul Fire & Marine Ins. Co., 26 S. D. 454, 128 N. W. 609. We have recognized the rule, which plaintiff stresses, that a policy of insurance is to be construed liberally in favor of

the insured and strcitly against the insurer. Axtell v. American Live Stock Ins. Co., 46 S. D. 498, 194 N. W. 652; Farmers' & Merchants' State Bank v. United States Fidelity & Guaranty Co., 28 S. D. 315, 133 N. W. 247, 36 L. R. A., N. S., 452. But this rule does not permit the court to indulge in forced construction, or to make a new contract for the parties. Miller v. Queen City Fire Ins. Co., 47 S. D. 379, 199 N. W. 455, 35 A. L. R. 263."

It follows we are of the opinion that the learned trial court misinterpreted the contract of the parties. We hold that the Ford truck described in the complaint was not within the collision coverage of the policy.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for defendant.

All the Judges concur.